IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-560

No. COA21-593

Filed 16 August 2022

Duplin County, Nos. 17 CRS 52069, 19 CRS 235

STATE OF NORTH CAROLINA

v.

DEREK EDWIN HIGHSMITH, Defendant.

Appeal by Defendant from judgments entered 16 March 2021 by Judge Henry L. Stevens, IV, in Duplin County Superior Court. Heard in the Court of Appeals 10 May 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott Stroud, for the State.*

*Joseph P. Lattimore for Defendant-Appellant.*

INMAN, Judge.

On 23 July 2018, Defendant Derek Edwin Highsmith ("Defendant") was charged with one count each of felony possession of marijuana, possession with intent to manufacture, sell and deliver marijuana, and possession of marijuana paraphernalia.

The recent emergence of hemp—another plant that looks and smells the same as illegal marijuana but is legal in North Carolina—to the North Carolina market has brought about speculation and discussion surrounding the ability of law

enforcement to use the sight and scent traditionally associated with marijuana as a basis to establish probable cause for a warrantless search or seizure.[1] Defendant argues that given the shared appearance and scent of marijuana and hemp, the sight or scent alone cannot support a finding of probable cause to seize a substance that appears to be marijuana.

For the following reasons, we conclude Defendant has failed to demonstrate reversible error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On 31 August 2017, Detective Mobley and Lieutenant Smith of the Duplin County Sheriff's Office witnessed a vehicle leave a residence after receiving numerous complaints of narcotics being sold there. The officers followed the vehicle, noted it had a broken brake light, and observed the vehicle illegally cross a yellow line. The officers initiated a stop of the vehicle.

Defendant was sitting in the vehicle's front passenger seat. The officers quickly

---

[1] *See, e.g., Omar Al-Hendy, Smokable Hemp in North Carolina: Gone for Good? An Analysis of the Constitutionality of the North Carolina Farm Act of 2019*, 10 Wake Forest J.L. & Pol'y 371, 371-72 (2020) ("Law enforcement must now satisfy a stronger burden to establish probable cause because both hemp and marijuana look and smell the same."); Robert M. Bloom & Dana L. Walsh, *The Fourth Amendment Fetches Fido: New Approaches to Dog Sniffs*, 48 Wake Forest L. Rev. 1271, 1285 (2013) ("[S]tudies indicate that drug-detection dogs do not alert to the illegal substances themselves, but to byproducts of the drug. . . . Thus, a dog merely detects what it has been conditioned to detect, which could be a lawful scent. This is noticeable in the case of discerning marijuana and hashish from objects that have similar smells, such as hemp products[.]").

recognized Defendant from past encounters and arrests involving marijuana, and at that point contacted a nearby K-9 unit to investigate the vehicle.

¶ 6        Meanwhile, Detective Mobley approached Defendant's side of the vehicle and immediately noticed a box of ammunition sitting behind Defendant in the rear passenger seat. The officers spoke separately with Defendant and the driver of the vehicle, who gave inconsistent stories about where they were headed and from where they were coming. The officers further noted the vehicle was not registered to any occupant of the vehicle, which Lieutenant Smith testified at Defendant's suppression hearing was "part of the criminal indicators that we observe as to a third-party vehicle."

¶ 7        When the K-9 unit arrived, the dog sniffed the exterior of the vehicle and alerted to the possible presence of drugs. Defendant was removed from the vehicle and the officers searched the vehicle. The officers located what they believed to be marijuana in a vacuum-sealed bag underneath the passenger seat. Officers also found on Defendant's person cash totaling $1,200.00, along with "a digital scale commonly used to weigh out narcotics or drug paraphernalia" and a flip cellphone.

¶ 8        Detective Mobley testified Defendant "stated that the marijuana and the other

items found inside of the vehicle were his[.]"[2] Defendant did not mention anything about hemp or otherwise lead the detectives to believe he was referring to legal hemp instead of illicit marijuana. The officers seized the items, which were sent to the State Crime Lab for analysis. Lab results subsequently confirmed the officers' suspicions that the seized substance consisted of 211.28 grams of illicit marijuana.

¶ 9        Defendant was indicted for felony possession with intent to sell, manufacture, or deliver a controlled substance, felony possession of a controlled substance, possession of marijuana and drug paraphernalia, manufacture of a controlled substance, and attaining the status of habitual felon.

¶ 10        Defendant filed a motion to suppress, challenging the lawfulness of the search and subsequent seizure of the marijuana. Defendant premised his argument on the emerging industry of legal hemp, indistinguishable by either sight or smell from marijuana. Defendant argued at the hearing that a K-9 alert standing alone cannot support probable cause when legalized hemp is widely available. Because marijuana and hemp are indistinguishable, Defendant argued, an unlawful seizure would first be needed in order to perform testing to confirm the substance was marijuana. The K-9 alert therefore could not support the warrantless search, and the ensuing

---

[2] It is unclear from the record whether Defendant had himself used the term "marijuana" when speaking with the officers or whether the officer was summarizing Defendant's statement regarding what later was confirmed to be marijuana.

evidence recovered should be suppressed, as the result of both an illegal search and an illegal seizure following the search.[3]

¶ 11    The State argued the existence of legal hemp does not change the analysis that a K-9 alert can support probable cause. The prosecutor explained that because the K-9 alert was not the only factor giving rise to the officers' probable cause to believe Defendant was engaged in criminal activity, this is "a K-9 sniff *plus*" case. (Emphasis added). Other factors cited by the prosecutor were the inconsistent statements made to officers by Defendant and the driver of the vehicle, the fact that neither the driver nor Defendant was the registered owner of the vehicle, and the officers' knowledge of Defendant's prior arrests related to marijuana.

¶ 12    The trial court denied Defendant's motion to suppress by order entered 8 February 2021. The trial court concluded that "K-9 Mindy's positive alert for narcotics at the SUV, along with other factors in evidence, provided the officers on the scene with sufficient facts to find probable cause to conduct a warrantless search of the inside of the vehicle."

¶ 13    Defendant's case came on for jury trial on 15 March 2021. The jury returned a guilty verdict against Defendant on one count of felony possession of marijuana in

---

[3] On appeal Defendant does not argue that the search of the vehicle was unsupported by probable cause but limits his argument to the seizure of the marijuana found during the search.

excess of one-and-one-half ounces. Defendant subsequently pled guilty to attaining habitual felon status. The trial court sentenced Defendant to 33 to 52 months in prison. Defendant gave proper oral notice of appeal to this Court.

On appeal, Defendant "specifically and distinctly" contends that the trial court denying his motion to suppress and subsequently admitting the contraband into evidence amounted to plain error. N.C. R. App. P. 10(a)(4) (2022).

## II. ANALYSIS

On appeal, Defendant argues that the trial court erred by failing to make adequate findings of fact and conclusions of law regarding the seizure of the marijuana. He also argues the trial court committed plain error in failing to instruct the jury that the State must prove Defendant had actual knowledge that the plastic bag contained marijuana and not hemp. Finally, Defendant argues he received ineffective assistance of counsel because his trial counsel did not request the instruction on actual knowledge.

### A. Defendant's Motion to Suppress

Defendant does not argue on appeal that the search of the vehicle was unconstitutional. Instead, he argues the trial court failed to make adequate findings of fact and conclusions of law regarding the seizure of the marijuana found during the search, given the difficulty of distinguishing legal hemp from illegal marijuana. We disagree.

The Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures and apply to "brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005) (citation and quotation marks omitted). However, "[i]t is a well-established rule that a search warrant is not required before a lawful search based on probable cause of a motor vehicle in a public roadway . . . may take place." *Id.* at 795-96, 613 S.E.2d at 39. This probable cause standard is met where the totality of "the facts and circumstances within the officers' knowledge and of which they had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (brackets and quotation marks omitted)

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Faulk*, 256 N.C. App. 255, 263, 807 S.E.2d 623, 628-29 (2017). Findings of fact are upheld if supported by competent evidence, and conclusions of law are reviewed *de novo. Id.* at 262, 807 S.E.2d at 629. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.*

> When ruling on a motion to suppress following a hearing, the judge must set forth in the record his findings of facts and conclusions of law. While [the] statute has been interpreted by the North Carolina Supreme Court to require findings of fact only when there is a material conflict in the evidence, our Court has explained that it is still the trial court's responsibility to make the conclusions of law.

*Id.* at 262-63, 807 S.E.2d at 629 (cleaned up); *see also* N.C. Gen. Stat. § 15A-977(f) (2021).

Defendant argues that the trial court's conclusions address only the legality of the search of the vehicle, and not the legality of the seizure of the marijuana found during the search. Defendant overlooks Conclusion of Law 7, which explicitly states that Defendant's "rights against unreasonable detentions, searches *and seizures* . . . have not been violated." Defendant also argues that the trial court's findings of fact were insufficient to support its holding that the seizure of the marijuana was constitutional. When ruling on a motion to suppress, the trial court must "make the findings of fact necessary to decide the motion." *State v. Bartlett*, 368 N.C. 309, 314, 776 S.E.2d 672, 675 (2015).

The trial court found that the officer's search revealed not only marijuana, but also additional items including a digital scale, over one thousand dollars in folds of money, ammunition, and a flip cellphone. Under the totality of the circumstances: a vacuum-sealed bag of what appeared to be marijuana, hidden under the seat and

found with these items, without any evidence that Defendant claimed to the officers the substance was legal hemp, the officers' suspicions were bolstered, amounting to probable cause to believe the substance at issue was in fact illicit marijuana and not hemp. The trial court therefore did not err in concluding that Defendant's Fourth Amendment rights were not violated.

**B. Jury Instructions**

¶ 21 We also reject Defendant's argument that the trial court plainly erred in failing to provide a jury instruction on actual knowledge. Plain error exists when the defendant demonstrates "that a fundamental error occurred at trial." *Id*. at 518, 723 S.E.2d at 334. "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." Id. (quotation marks omitted). "In the absence of such impact, relief is unavailable to a defendant who has not objected." *State v. Inman*, 174 N.C. App. 567, 573, 621 S.E.2d 306, 311 (2005).

¶ 22 "Felonious possession of a controlled substance has two essential elements. The substance must be possessed and the substance must be knowingly possessed." *State v. Galaviz-Torres*, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015) (citation omitted). "[W]hen the defendant denies having knowledge of the controlled substance that he has been charged with possessing . . . , the existence of the requisite guilty knowledge becomes a determinative issue of fact about which the trial court must instruct the

jury." *Id.* at 49, 772 S.E.2d at 437 (quotation marks omitted).

¶ 23      Here, the same facts supporting the trial court's denial of Defendant's motion to suppress also reveal there is no support in the record for his argument that the trial court erred—much less plainly erred—in failing to instruct the jury *ex mero motu* on actual knowledge. Given the above circumstances under which the contraband was found—*e.g.*, its location and packaging with the scale, ammunition, and cash, all of which were before the jury—we cannot conclude that the absence of an actual knowledge instruction had a probable impact on the jury's verdict. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

## C. Ineffective Assistance of Counsel

¶ 24      Finally, Defendant maintains he also received ineffective assistance of counsel because his trial counsel failed to request an actual knowledge instruction. *See State v. Lane*, 271 N.C. App. 307, 314, 844 S.E.2d 32, 39 (2020) (explaining that the prejudice prong of the ineffective assistance of counsel claim "is something less than that required under plain error"). Even assuming deficient performance in failing to request the instruction, and for the same reasoning based on the totality of the evidence stated above, we hold Defendant cannot show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 313-14, 844 S.E.2d at 39 (explaining that "under the reasonable probability standard the likelihood of a different result must be substantial, not just

conceivable") (cleaned up).

## III.    CONCLUSION

We conclude the trial court did not err in denying Defendant's motion to suppress or failing to instruct the jury on actual knowledge, and Defendant has failed to establish that he received ineffective assistance of counsel.

NO ERROR.

Judges ARROWOOD and WOOD concur.